Randall Knox, State Bar No. 113166
The Flood Building
870 Market Street, Suite 820
San Francisco, CA 94102
(415) 765-7500
randyknox@aol.com

Attorney for Valery Kosmachov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>VALERY KOSMACHOV,<br><br>Defendant. | No. 17CR00508 WHO<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Date: June 18, 2020<br>Time: 1:30 p.m.<br>Ctrm: 2 |

**INTRODUCTION**

Defendant Valery Kosmachov submits this memorandum in support of his sentencing.

**STATEMENT OF THE CASE AND STATEMENT OF FACTS**

Defendant Valery Kosmachov has pled guilty to conspiring to violate the International Emergency Economic Powers Act under 50 U.S.C. § 1705.  The charges are based on the transshipments of electronic components with both civilian and military uses from the United States through Estonia or Finland to the Russian Federation without obtaining required licenses or authorizations from the U.S. Department of Commerce ("DOC").  Codefendant Sergey Vetrov is a Russian national and has not been arrested.  Codefendant Adimir OU was an electronics company in which Kosmachov was co-founder.  Codefendant Eastline Technologies is an Estonian company which Kosmachov owned with Sergey Vetrov.

– 1 –

Valery Kosmachov is a 67-year-old Estonian engineer who was born in the former Soviet Republic of Lithuania. His family moved to Estonia at age 16 when his father was transferred there for work. After finishing high school in Estonia, he attended the Moscow Power Energy Institute, graduating in 1975. Following a two-year service in the military, he returned to Estonia and worked for the Cybernetic Institute at the Estonian Academy of Science from 1977 until 1991.

In 1993, Kosmachov and two other engineers started Adimir, an Estonian company that sold electronics, including computer chips called Field Programmable Gate Arrays ("FPGA") and analog-to-digital converters. These chips have a variety of common applications, and are used in audio and video recording, telecommunications, medical devices, scientific instruments, automobiles, household appliances and consumer electronics. They are also used in civilian and military aviation and radar. Adimir purchased and sold products in Eastern Europe, Scandinavia and Russia. Around this time, Kosmachov met codefendant Vetrov, another graduate of the Moscow Power Energy Institute, who also dealt in electronics.

With the collapse of the Soviet Union, buying electronics from Russia became more difficult and Kosmachov relied increasingly on American suppliers. In the late 1990s, Kosmachov met PF, the unindicted coconspirator described in paragraph 22 of the Indictment, at a trade show in St. Petersburg, Russia. PF is a Russian-born U.S. citizen who owns Analog Devices, Inc., an American electronics company with customers in Estonia, among other places. Beginning in 1998, Kosmachov legally purchased products from PF for resale.

In 2005, Kosmachov and Vetrov formed Eastline Technologies, another Estonian electronics reseller. Eastline and Adimir shared the same offices. Vetrov also owned two Russian companies, Ramtronica and Real Components, which purchased products from

Eastline.  Until 2009, none of Eastline's transactions with Vetrov involved "dual use" electronics.

In 2009, PF requested Kosmachov's assistance with a shipment that was being detained by U.S. Customs.  PF represented to Kosmachov that the shipment was being held because of a clerical mistake in the required documentation.  When questioned by Kosmachov about whether the shipment was properly licensed, PF assured Kosmachov that no licenses were required.  Kosmachov assisted in having the items shipped to Estonia and forwarded to Russia.  Transactions involving PF are alleged in the Indictment, but are not in the plea agreement.

From 2012 through 2014, Vetrov used an American company, Rootron, LLC, to purchase electronics from American manufacturers, like Digi Key Corp., for shipment to Eastline.  The items would then be shipped from Estonia to one of Vetrov's companies in Russia.  These products could not be shipped legally to Russia from the U.S. without a DOC license.  The Shipper's Export Declarations filed with the Department of Homeland Security listed either Eastline or Adimir and the "end user" or ultimate consignee, falsely representing that the components would assembled or used by those companies.  Kosmachov was aware of these misstatements.  Vetrov used Swedbank Bank in Estonia to reimburse Rootron or pay the manufacturers directly.  Kosmachov was not involved in those transactions.

Kosmachov was concerned about shipping "dual use" items to Russia, but Vetrov assured him that the electronics were being sold for civilian telecommunications equipment.  Kosmachov also knew that Vetrov initially did not have the license necessary for Vetrov to sell to the Russian military.  When Kosmachov became aware that Vetrov later obtained the license, Vetrov still insisted that the electronics were for civilian use.

By then, however, Vetrov was Eastline's biggest client, and while Kosmachov earned only a small percentage fee from each shipment, Kosmachov felt the financial pressure to support his family and his employees and he continued transshipments to Russia for Vetrov.

On September 17, 2017, Kosmachov and the other defendants were indicted for conspiracy and related smuggling charges.

On September 12, 2018, under the Extradition Treaty between the United States and the Republic of Estonia, Kosmachov was arrested in Tallinn, Estonia on Letters Rogatory and jailed. Kosmachov did not contest extradition, and remained in custody until he was transported to the Northern District of California where he was served with the warrant in this case on March 14, 2019. After Kosmachov's initial appearance in court he was remanded to the custody of the U.S. Marshal and he has remained in custody since.

During the entry of his guilty plea, Kosmachov expressed appreciation of the gravity of his offense and accepted responsibility for his conduct. Kosmachov admitted that was aware that he was breaking U.S. law, even though he believed, and wanted to believe, that the products were being used for civilian technology.

Kosmachov's dependence on Vetrov's business to generate income to provide for his family and his employees motivated his actions, unlike coconspirator PF, who profited (and later forfeited) millions of dollars. Kosmachov, while not poor, is a man of modest assets and means.

Kosmachov has absolutely no criminal history. His reputation in Estonia, built over decades of industry, responsibility and ethics, was not one of questionable morality. His imprisonment for over the past 20 months has bankrupted him financially and devastated his family. His age and medical conditions, including high blood pressure, place him at greater

risk of COVID-19 and poor health.  His wife of 44 years, Galina, suffers from heart disease, thyroid problems and the stress from having her husband imprisoned for the last 20 months.

These circumstances should be considered by the Court in fashioning Kosmachov's sentence.

**ARGUMENT**

GUIDELINES CALCULATIONS

Under <u>U.S. v. Booker</u>, 543 U.S. 220, 233 (2005), the Guidelines are advisory and not binding on the court.

The defense agrees with the Presentence Report that Kosmachov is Criminal History Category I.  The defense agrees with the Offense Level Computation in the PSR except that the PSR does not acknowledge credit for the time Kosmachov served in Estonian jail awaiting extradition.

SENTENCING STANDARDS

In fashioning an appropriate sentence under 18 U.S.C. § 3553(a), the Court should consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes by the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

      (A)    the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and are in effect on the date the defendant is sentenced; or

      (B)    ***

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Federal sentencing law provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of the person convicted of the offense which a Court ... might receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661; see U.S. v. Duarte, 901 F.2d 1498, 1500 (9th Cir. 1990).  The law expressly limits the Court to fashion a sentence that is sufficient, but not greater than necessary, to achieve the sentencing goals reflected in 18 U.S.C. § 3553(a)(2).

<u>CREDIT FOR TIME SERVED</u>

Although Kosmachov was not brought to the United States until March 2019, he is entitled to credit for time served from September 12, 2018, when he was arrested and imprisoned in Estonia for the conduct upon which the Indictment is based.  The Presentence Report states only that Kosmachov has been in federal custody since March 14, 2019, when he arrived in the Northern District of California, and does not mention foreign custody.  Based on the PSR, Kosmachov will have served 457 actual days in federal custody as of June 18, 2020.

Under 18 U.S.C. § 3585(b)(1), a defendant is entitled to credit for "any time he spent

1    in official custody...as a result of the offense for which the sentence was imposed." "Official

2    custody" does not include halfway houses or electronic detention, but includes foreign jails.

3            Similarly, 18 U.S.C. § 4105(b) gives foreign prisoners transferred to the custody of the

4    Attorney General presentence credits for time in foreign jails "spent in custody in connection

5    with the offense or acts for which the sentence is imposed."  Under 18 U.S.C. § 4105(c)(2), a

6    transferred offender is entitled to good time credits for foreign custody even when the

7    transferring country does not award good time credits.

8            Kosmachov was arrested and jailed in Estonia on these charges on September 12,

9    2018.  There were no other foreign or U.S. charges against Kosmachov beside the charges

10   here.  Kosmachov did not resist or contest extradition to the U.S.

11           Cases suggest that ordinarily the Attorney General, not the sentencing judge, has the

12   authority to award credit for time served, usually through the Bureau of Prisons ("BoP").  In

13   circumstances where the BoP may not recognize a defendant's non-federal custody credits, a

14   court may order that defendant be given that additional credit for time served.  See U.S. v.

15   Knight, 562 F.3d 1314, 1328 (11th Cir. 2009).

16           Because Kosmachov has been in custody since September 12, 2018, the Court should

17   expressly state that Kosmachov is entitled to credit against his sentence for the time he spent in

18   foreign custody.  Kosmachov served an additional 189 days in custody in Estonia awaiting

19   extradition and in transit, for a total of 646 actual days in jail on June 18, 2020.  Good time credits

20   on 646 actual days would result in an additional 94 days good time for a total credit for time

21   served of 740 days.

22           When Kosmachov is released, he will voluntarily depart to Estonia under the other terms

23   and conditions imposed by the Court.

24   ///

<u>MINOR ROLE</u>

Although the plea agreement waives the right to request a further downward departure, the Court should consider the level of Kosmachov's involvement in the conspiracy because he is substantially less culpable of the offense than codefendant Vetrov and unindicted coconspirator PF.

U.S.S.G. § 3B1.2 provides that where the defendant was a minor participant, the offense level should be decreased by two.  The Application Notes expressly grant the reduction to a defendant, like Kosmachov, who performed a limited function in the criminal activity.  A "minor participant" within the meaning of § 3B1.2(b) is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, Application Note 5.  The determination of the mitigating role adjustment is heavily dependent upon the facts of the particular case and should be based on the totality of the circumstances.  Application Note 3(C).

In determining whether to apply a mitigating role adjustment, the court should consider, among other factors:

(i) the degree to which the defendant understood the scope and structure of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2, Application Note 3(C).

Application Note 3(C) expressly states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline," and "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity."

The relevant comparison "is to the conduct of the co-participants in the case at hand." U.S. v. Cantrell, 433 F.3d 1269, 1283 (9th Cir. 2006); see U.S. v. Johnson, 297 F.3d 845, 874 (9th Cir. 2002) ("[A] defendant's culpability is to be measured against his co-participants, not a hypothetical 'average participant.' ").  When a defendant is "'substantially' less culpable than his or her co-participants," a downward role adjustment is appropriate.  Cantrell.

Here the other co-participants are Sergey Vetrov and PF, both of whom organized and funded the smuggling operation using Kosmachov as a means to transport prohibited electronics.

The smuggled items were selected and purchased by Vetrov and PF, not Kosmachov. Kosmachov's role was limited to accepting the items, listing his companies as the "end user" or ultimate consignee, and shipping the goods to the Russian Federation.  Other than consolidating separate, smaller shipments into larger shipments, Kosmachov had no decision-making authority or discretion.

Kosmachov had no proprietary interest in the electronics.  His benefit in the criminal activity was a small percentage of the shipping costs, not the cost of the electronics themselves, and he played no role in the transfer of funds to pay for the goods.  Kosmachov was essentially the equivalent of a drug mule.  Although Kosmachov knew the items were illegal to ship to the Russian Federation because they lacked the required U.S. permissions, he

assuaged his concerns with the belief that the items were being used for civilian, not military, use.

Compared to Vetrov and PF, Kosmachov is substantially less culpable and, as such, his role should be considered as a mitigating circumstance.

### MITIGATING SPECIFIC OFFENDER CHARACTERISTICS

Likewise, Kosmachov's specific characteristics should be considered a mitigating circumstance even in the absence of a downward departure.

Under U.S.S.G. § 5H1.1, a defendant's age, along with other offender characteristics, may be a basis for a downward departure when they "distinguish the case from a typical case covered by the guidelines."  That section expressly states that "[a]ge may be a reason to depart downward in a case in which the defendant is elderly and infirm…"

Although Kosmachov is not infirm, he is 67-years-old and suffering from high blood pressure and other health issues which heighten his vulnerability to COVID-19 and other diseases.

In addition, U.S.S.G. § 5H1.6, Application Note 1(B)(i), authorizes a downward departure where a guideline range sentence will cause a substantial loss of caretaking or financial support to the defendant's family.  The loss of caretaking or financial support must be irreplaceable and must exceed the harm ordinarily incident to incarceration.  Application Note 1(B)(ii-iii).

Here, Kosmachov was the sole source of financial support for his family aside from his wife's small pension.  His family's already modest standard of living has been devastated by Kosmachov's incarceration and made worse by the current worldwide pandemic.  Even before his arrest, financial pressure influenced Kosmachov to compromise his integrity and values by engaging in the smuggling conspiracy in order to provide for his family and his employees.

Also, his wife, Galina, suffers from heart disease, thyroid problems and the stress and anxiety of Kosmachov's imprisonment.  Kosmachov's support of his family is irreplaceable.

### CONCLUSION

The court should fashion a sentence sufficient, but not greater than necessary, to achieve the sentencing goals reflected in 18 U.S.C. § 3553(a)(2).  For the reasons stated above, defendant Valery Kosmachov requests that the Court grant credit for time served of 646 actual days and 94 days good time credits for a total of 740 days credit for time served.

Dated:  June 12, 2020                                    Respectfully submitted,


                                                              Randall Knox
                                                              Attorney for Valery Kosmachov